UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 4:07CR00166 CEJ (AGF) |
| HUGO BARRY THOMPSON, JR., ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pretrial motions filed by Defendant, Hugo Barry Thompson, Jr. Pretrial matters were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Defendant filed a motion to suppress evidence and a motion to suppress statements. (Doc. Nos. 67 and 68). An evidentiary hearing was held on April 16, 2007. The government was represented by Assistant United States Attorney John T Davis. Defendant was present and represented by his attorney, Stephen R. Welby. At the hearing, the government presented the testimony of Special Agent ("SA") Matt McKnight, who has been employed with the Drug Enforcement Administration ("DEA") for nearly four years, and has been assigned as DEA liaison to the St. Louis County Multi-jurisdictional Drug Task Force (the "Task Force") for more than one year. The government also presented the testimony of Detective Joe Hollocher, who has been employed with the Dellwood Police Department

for approximately nine years, and who has been assigned to the Task Force for four years. The witnesses were cross-examined extensively by defense counsel. The parties filed post-hearing memoranda, after which the matter was taken under submission.

Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witnesses, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On February 19, 2007, at approximately 6:00 a.m., agents with the Task Force received information from a confidential informant ("CI") regarding an individual named Barry Collins who had checked in at the Best Western Hotel in Kirkwood, Missouri. Based on the information they received, the Task Force agents noticed that the situation appeared remarkably similar to one they had encountered one month before.

Regarding the prior incident, on January 9, 2007, the Task Force had received information regarding an individual who had obtained more than one room at a hotel in Eureka, Missouri. He had been reluctant to give the licence number of his vehicle, and was with a large number of people. Through their investigation, the agents learned that the individual was associated with two vehicles, one with Ohio license plates, and one with Oklahoma plates. After learning that the Ohio vehicle had been reported as stolen, the agents took custody of it, and discovered more than 200 pounds of marijuana. The next day the agents returned to the hotel room and found two individuals, Rebecca Exley and Sean Taylor, were still there. The suspects made statements to the agents implicating

others and advising the agents of the others' location at another hotel. Ms. Exley also permitted the agents to search her vehicle, identified as a red Pontiac G6. Through their investigation the agents determined that the Pontiac G6 automobile had been rented at the airport by an individual named Michael Johnson in Oklahoma City. Taylor, Exley and two other individuals implicated by them were arrested and indicted on drug charges.

Following receipt of the information from the CI on February 19, 2007, agents reported to the Best Western Hotel at approximately 8:30 a.m. and established surveillance. Similar to the situation in January, Mr. Collins had rented more than one room and appeared to be associated with a larger group of people. He listed his vehicle as an Oldsmobile 98. Through their investigation the agents believed that Mr. Collins was also associated with a teal Uplander vehicle, and through a license check determined that the Uplander had been rented by Michael Johnson in Oklahoma City – the same person who had rented the Pontiac G6 in connection with the January incident. This information heightened the agents' interest in the matter. Det. Quinn Turner, with the Task Force, looked through the back window of the Uplander and saw that there was a dark sheet or blanket covering some bulky items, which is the same manner in which the marijuana had been concealed in the Ohio vehicle the previous month.

Approximately 30 minutes later, at around 9:00 a.m., Mr. Collins and two other males, later identified as Earl Thomas and Defendant Hugo Thompson, left the hotel. The three males looked into the Uplander, and then got into the Oldsmobile 98, which was parked next to the Uplander, and drove away, with Defendant Thompson driving.

3

After about 30 minutes, they returned and went inside the hotel. Approximately two hours later, the three men again exited the hotel, and drove away in the Oldsmobile, with Defendant driving. Approximately 30-40 minutes later, Defendant returned to the hotel alone.

At approximately 12:30 or 12:40 p.m., Defendant Thompson and co-Defendant Valerie Weber exited the hotel, conversing with one another. Defendant Thompson went to the Oldsmobile, put some luggage or items inside, and got into the car, while Ms. Weber got into the Uplander. Two more females thereafter came out of the hotel, later identified as co-Defendants Jacqueline Johnson and Kendra Walton. Ms. Johnson got into the Oldsmobile with Defendant Thompson, and Ms. Walton put her things into the Uplander and got in with Ms. Weber. The two vehicles then drove off, and entered onto Interstate 44, heading east, with the Oldsmobile in the lead. Because the agents had maintained constant surveillance on the Uplander throughout this period, they knew that the items in the back of the Uplander that had been covered by the blanket had not been removed.

Task Force agents, including Det. Hollocher, who had assisted with surveillance at the hotel, followed the vehicles and called for a marked vehicle to make a vehicle stop. After observing a traffic violation, the officer in the marked vehicle activated his lights and siren and curbed the Oldsmobile on the side of the highway, for failure to maintain a single lane. The Uplander was stopped by other officers and agents somewhere behind the Oldsmobile.

Det. Hollocher assisted with the traffic stop of the Oldsmobile. By the time he approached the vehicle, which was approximately one minute after the stop, Defendant Thompson and Ms. Johnson were standing outside the Oldsmobile, toward the back of the car. Det. Hollocher was dressed in plain clothes, but was wearing his badge, which was prominently displayed around his neck. He did not recall whether he had his firearm with him, but if he did, it would not have been observable by Defendant. Det. Hollocher approached Defendant and asked him where he was coming from. At this time there were a total of three law enforcement officers at the scene. None of the officers displayed their firearms. Defendant responded that he was in town for a family reunion, and identified Ms. Johnson as his cousin. He said they had gotten something to eat and that he and his cousin were going back to the city because they had gotten turned around.

At approximately this point in the conversation, Det. Hollocher was contacted by Det. Turner, who advised him that a large quantity of marijuana had been located in the Uplander. Based on this information, and aware that the two suspects were associated with the Uplander, Defendant Thompson and Johnson were placed under arrest and put in handcuffs. Although Det. Hollocher's testimony as to the exact sequence of events was at times contradictory, the Court finds that immediately after Defendant was put in handcuffs, Det. Hollocher asked Defendant Thompson for permission to search the Oldsmobile, and Defendant said yes. At the time consent was requested, Defendant did not appear to be under the influence of any drugs or alcohol and he appeared to understand what was being said. No threats were made nor were the officers "barking"

5

any commands. The officers did not advise Defendant of his rights under Miranda, or that he had the right to refuse consent to search or to stop the search at any time. Nor did Det. Hollocher make any promises to Defendant or advise him that it would be in his interest or that he would receive any leniency if he cooperated or told the officers whose marijuana it was.[1]

After receiving consent, the agents opened the trunk of the car and Det. Hollocher began searching it. Having determined that it was too dangerous to search on the side of the highway, however, Det. Hollocher advised Defendant that they would be transporting them and the vehicle to the DEA offices and would complete the search there. Defendant did not object. No items were seized from Defendant or from the vehicle at the scene of the stop.

Defendant Thompson, the three other suspects, and the two vehicles were transported to DEA headquarters. Defendant was booked, and certain items were seized

---

[1] From the testimony, it appears Defendant Thompson made some additional statements denying he was with others or that he had knowledge of the Uplander, but it is unclear whether those statements were made before or after Defendant's arrest. The government has stated that it is not seeking to use any of these statements, and the Court therefore will not address the admissibility of these statements.

It appears the officers also asked questions of Ms. Johnson at the scene, and that she denied being the cousin of Defendant and said she was in town to trade the Oldsmobile for another vehicle. The government refers to these statements in both its pre-hearing and post-hearing memoranda. At the hearing, however, no testimony was elicited regarding Thompson's statements. Because the Court does not know whether Ms. Johnson made these statements before or after the Defendants were arrested, the Court will assume the statements were made post-arrest and will not consider Ms. Johnson's statements in analyzing the search and seizure at issue in this case.

from his person. The Oldsmobile was searched, and the agents found an empty safe, a red gift bag that contained a large bundle of currency, a day planner that had certain documents and business cards, and miscellaneous paperwork, which items were seized. SA McKnight attempted to interview Defendant, but Defendant did not make any statements at DEA headquarters.

## CONCLUSIONS OF LAW

### A. Stop and Arrest of Defendant

The law is clear that when a police officer observes a traffic violation – however minor – he has probable cause to stop the vehicle. Whren v. United States, 517 U.S. 806, 818 (1996); United States v. Martin, 411 F.3d 998, 1000 (8th Cir. 2005). "This is true even if a valid traffic stop is a pretext for other investigation." United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002). Here, the evidence is undisputed that the patrol officer called to the scene stopped Defendant's car for failure to maintain a single lane, which Det. Hollocher testified was a violation of Missouri traffic law. The Court rejects Defendant's assertion that there was no credible evidence to support the occurrence of the traffic violation. Det. Hollocher was advised of the violation by the patrol officer who observed it, and his testimony to that effect is admissible in a suppression hearing. Fed. R. Evid. 1101(d)(1). Defendant has not presented any evidence to the contrary. As such, the officers had probable cause to stop Defendant's car.

Once an officer has a right to stop a driver, the officer may "conduct an investigation 'reasonably related in scope to the circumstances that justified the

7

interference in the first place.'" United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (quoting United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990)). "This reasonable investigation includes asking for the driver's license and registration, requesting that the driver sit in the patrol car, and asking the driver about his destination and purpose." Id.; United States v. Jones, 269 F.3d 919, 924-5 (8th Cir. 2001). Officers may also ask the same information of passengers. Linkous, 285 F.3d at 719. The officers here were therefore justified asking Defendant and Ms. Johnson to step out of the car, and inquiring about their destination and purpose. United States v. Pulliam, 265 F.3d 736, 740 (8th Cir. 2001); United States v. Winters, 221 F.3d 1039, 1041 (8th Cir. 2000); United States v. Barahona, 990 F.2d 412, 416-7 (8th Cir. 1993).

The law is also clear that when "'the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions.'" United States v. Johnson, 58 F.3d 356, 357 (8th Cir. 1995) (quoting Barahona, 990 F.2d at 416). Police officers may briefly detain an individual for an investigative purpose when they have a reasonable belief that "criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). The reasonable belief requires suspicion based on "'particularized, objective facts which, when taken together with rational inferences from those facts, reasonably warrant[] suspicion that a crime [is] being committed.'" United States v. Beck, 140 F.3d 1129, 1136 (8th Cir. 1998) (quoting United States v. Martin, 706 F.2d 263, 265 (8th Cir. 1983)).

When an officer develops reasonable, articulable suspicion of criminal activity during a traffic stop, he is justified in making a greater intrusion unrelated to the traffic offense. United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995); Bloomfield, 40 F.3d at 918. Officers are "permitted 'to graduate their responses to the demands of the particular situation.'" Pereira-Munoz, at 791 (quoting United States v. Place, 462 U.S. 696, 710 n.10 (1983)). The reasonable suspicion is assessed in light of the totality of the circumstances, taking into consideration the officers' experience. Id.

> The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. . . . [A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.

Florida v. Royer, 460 U.S. 491, 500 (1983); accord Bloomfield, 40 F.3d at 916; United States v. Willis, 967 F.2d 1220, 1224 (8th Cir. 1992).

Here the officers had reasonable suspicion based on the conduct of Defendant and the other suspects at the hotel and the marked similarity between this incident and the incident that had occurred the previous month, including that the Uplander had been rented by the same individual who had rented the Pontiac G6 and the fact that bulky items appeared to be concealed in the Uplander in the same manner as before. Defendant's statement regarding the purpose of his current travels appeared to be inconsistent with the surveillance conducted by the officers, providing further basis to expand the scope of the stop. Consequently, even if the officers had not, in the interim,

determined that there was a large quantity of marijuana in the Uplander, they would have been justified in expanding the scope of the stop to request consent to search. See United States v. Blaylock, 421 F.3d 758, 769 (8th Cir. 2005) (passenger's extreme nervousness, combined with presence of masking odors, contradictory statements, and driver's vague reasons for trip, provided reasonable cause to detain vehicle for canine search), cert. denied, 126 S.Ct. 1108 (2006); accord United States v. Sanchez, 417 F.3d 971, 975-76 (8th Cir. 2005); United States v. Poulack, 236 F.3d 932, 935-6 (8th Cir.), cert. denied, 534 U.S. 864 (2001); United States v. Lyton, 161 F.3d 1168, 1170-71 (8th Cir. 1998). See also United States v. Yang, 345 F.3d 650, 654 (8th Cir. 2003) ("the time it takes for an officer to find out if consent will be given cannot be an unlawful detention in the absence of coercive or otherwise unusual circumstances"), cert. denied, 541 U.S. 952 (2004). It was also reasonable to request that they move to another location to complete the search. See United States v. Montano-Gudino, 309 F.3d 501, 504 (8th Cir. 2002).

Once the officers discovered the large quantity of marijuana under the blanket in the back of the Uplander, the officers had probable cause to arrest both Defendant and the passenger, Johnson. Probable cause exists "when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested." United States v. Oropesa, 316 F.3d 762, 768 (8th Cir. 2003) (quoting United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001). Accord United States v. Travis, 993 F.2d 1316, 1323 (8th Cir.), cert. denied, 510 U.S.

883 (1993) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Officers are not required to rule out all innocent explanations, nor are they required to be able to prove a case beyond a reasonable doubt to effect a warrantless arrest. Maryland v. Pringle, 540 U.S. 366, 371 (2003) ("the probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances"); Illinois v. Gates, 462 U.S. 213, 235 (1983) ("Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision."). As the Eighth Circuit has observed, "We assess probable cause from the viewpoint of a reasonably prudent police officer, acting in the circumstances of the particular case. We remain mindful that probable cause is a practical, factual, and nontechnical concept, dealing with probabilities." United States v. Crossland, 301 F.3d 907, 911 (8th Cir. 2002). Moreover, in "[m]aking this determination, the court may consider the collective knowledge of all others involved." United States v. Morgan, 997 F.2d 433, 435 (8th Cir. 1993); United States v. Rich, 795 F.2d 680, 682 (8th Cir. 1986).

Defendant's contention that there was no information tying Defendant to the Uplander is unfounded. When Defendant checked into the hotel, he was associated with a larger group of people. In the morning, Defendant and two other men left the hotel, and the officers conducting surveillance observed them stop and look inside the Uplander, which was parked near the Oldsmobile, before driving away in the Oldsmobile. Later that morning, Defendant walked out of the hotel with one of the female suspects,

conversing with her, and then they each entered separate vehicles at the same time, with the female getting into the Uplander. Two other women also then left the hotel together, and split up, with one entering each vehicle. The two vehicles then left the hotel parking lot at the same time, and entered the highway, with the Uplander following the Oldsmobile. The events, overall, were also very similar to the incident the prior month, in which Michael Johnson had also rented one of the vehicles.

Based on these facts, the officers had more than sufficient cause to believe that Defendant and Ms. Johnson were engaged in affirmative conduct with the occupants of the Uplander. Under these facts, a reasonably prudent officer, upon discovering a large quantity of marijuana in the Uplander, would be justified in believing that Defendant was involved in a drug transaction. Pringle, 540 U.S. at 371-72; United States v. Rivera, 370 F.3d 730, 733 (8th Cir. 2004) (probable cause where defendant appeared to be providing surveillance for another individual officers had cause to believe was engaged in narcotics transactions); Gonzalez, 220 F.3d at 925-26. See also United States v. Gabrio, 295 F.3d 880, 882 (8th Cir. 2002) (probable cause for search warrant based on first-hand information of reliable informant). As such, the officers were justified in placing Defendant and Ms. Johnson under arrest.

Because neither the investigative detention nor the arrest violated the Fourth Amendment, any argument that the search was the product of an illegal seizure has no merit. Lyton, 161 F.3d at 1171; United States v. Miller, 20 F.3d 926, 930 (8th Cir. 1994).

### B. Statements Made at the Time of the Stop

Defendant seeks to suppress the statements made by him at the scene, essentially asserting they were the product of an unlawful seizure and search. The Court rejects this argument, having found the stop and the detention to be valid and supported by reasonable suspicion. The Supreme Court has recognized that "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Berkemer v. McCarty, 468 U.S. 420, 440 (1984). However, "'most Terry stops do not trigger the detainee's Miranda rights.'" United States v. Martinez, 462 F.3d 903, 909 (8th Cir. 2006), cert. denied, 127 S.Ct. 1502 (2007) (quoting United States v. Pelayo-Ruelas, 345 F.3d 589, 592 (8th Cir. 2003)).

On these facts, the Court finds the officers were not required to advise Defendant of his rights under Miranda in connection with the initial questioning. The only statements the government seeks to introduce in its case in chief pertained to the purpose and destination of Defendant's travels and were directly related to the officers' reasonable suspicions. The questioning took place in the middle of the day, on the side of the road and in view of other drivers, and lasted only minutes. At the time of this initial questioning, Defendant was not restrained in any manner, and no force of any sort was displayed or exerted during the course of this initial questioning. As such, under the totality of the circumstances, the Court finds that Defendant was not in custody for purposes of Miranda, and his statements prior to his arrest (which followed the discovery

of the marijuana) are not subject to suppression. See Pelayo-Ruelas, 345 F.3d at 593 (holding that where defendant was removed from car and patted down in connection with drug investigation, Miranda warnings were not required and statements were not subject to suppression, where only one agent approached and questioned defendant, agent was in plain clothes and did not draw weapon, atmosphere was like typical traffic stop, and investigation was reasonably limited to confirming or dispelling suspicions).

### C. Search of the Oldsmobile

The officers also had valid consent to search the car. In the context of a warrantless search, it is the prosecution's burden to prove by a preponderance of the evidence that a consent to search was freely given. United States v. White, 81 F.3d 775, 780 (8th Cir. 1996); Miller, 20 F.3d at 930. The consent, however, need not necessarily be knowing and intelligent. Schneckloth v. Bustamonte, 412 U.S. 218, 241 (1973). One need not be aware of his or her right to consent in order to make the consent voluntary. United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990).

A consent is voluntary if it is the product of free choice, the defendant's will is not overborne, and the consent is not given under coercion or duress. In determining whether the prosecution has met its burden, courts look to both the characteristics of the accused and the details of the environment in which the consent was given. Chaidez, 906 F.2d at 381. Voluntariness is a fact question to be determined from the totality of the circumstances present. Schneckloth, 412 U.S. at 226-227; United States v. Matlock, 415 U.S. 164 (1964). The factors to be considered in determining whether consent is

14

voluntary include:

> (1) the defendant's age; (2) the defendant's general intelligence and education; (3) whether the defendant was under the influence of drugs or alcohol; (4) whether the defendant was informed of his Miranda rights prior to the consent; and (5) whether the defendant had experienced prior arrests so that he was aware of the protections the legal system affords to suspected criminals.

United States v. Alcantar, 271 F.3d 731, 737 (8th Cir. 2001); accord United States v. Hathcock, 103 F.3d 715, 719-20 (8th Cir. 1997); Chaidez, 906 F.2d at 381. Among the factors to be considered in examining the environment surrounding the consent, courts examine: the length of time a person is detained and questioned; whether the person was threatened, physically intimidated, or punished by the police; whether the defendant relied upon promises or misrepresentations made by the police; whether the defendant was in custody; whether the consent occurred in a public or secluded location; and whether the defendant objected to the search or stood silently by while the search occurred. United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001); Chaidez at 381. The foregoing factors are not to be applied mechanically, and no single factor is dispositive. Schneckloth, 412 U.S. at 226-27; Chaidez, at 381.

Applying the above factors, there is nothing to suggest that Defendant's will was overborne, and the Court finds that the government has met its burden to establish that Defendant's consent was voluntary. See Poulack, 236 F.3d at 936; Miller, 20 F.3d at 930. At the time of the incident, Defendant was 39 years old. He did not appear to be under the influence of any drugs or narcotics, appeared to understand what was being

15

said, and provided responsive answers. Although there were three officers present, only one of those officers was speaking to Defendant at the time consent was requested. Only minutes had passed from the time of the stop until consent was given, and the request was made on the side of a busy public highway during daylight hours. No threats or promises were made to induce Defendant to consent, and none of the officers displayed their firearms.

While Defendant had been arrested and placed in handcuffs prior to requesting consent, that fact does not outweigh the other factors which all support a voluntary consent. See United States v. Perry, 437 F.3d 782, 785 (8th Cir. 2006) (finding consent to search voluntary though defendant had been arrested and police did not recite Miranda rights before requesting consent); United States v. Montano-Gudino, 309 F.3d 501, 504 (8th Cir. 2002) (finding consent to search voluntary though defendant detained in small room with three armed police officers and defendant not advised that he did not have to consent); United States v. Burns, 298 F.3d 523, 541 (6th Cir. 2002) (defendant's consent not invalidated simply because he was in custody and had been arrested at the time he gave it) (citing United States v. Watson, 423 U.S. 411, 424 (1976)); United States v. Trueber, 238 F.3d 79, 95 (1st Cir. 2001) ("custody alone has never been enough in itself to demonstrate . . . coerced . . . consent to search") (quoting United States v. Collazo-Aponte, 216 F.3d 163, 187 (1st Cir. 2000)). Nor were the officers required to advise Defendant of his Miranda rights prior to requesting consent. See United States v. LaGrone, 43 F.3d 332, 335 (7th Cir. 1994) (request for consent to search is not

16

interrogation for which <u>Miranda</u> warnings would be required, as request not likely to elicit incriminating statement); <u>United States v. Rodriguez-Garcia</u>, 983 F.2d 1563, 1568 (10th Cir. 1993) ("[e]very federal circuit court which has addressed the <u>Miranda</u> issue presented here has reached the same conclusion that a consent to search is not an incriminating statement"); <u>Cody v. Solem</u>, 755 F.3d 1323, 1330 (8th Cir. 1985) (same).

<u>United States v. Yousif</u>, 308 F.3d 820 (8th Cir. 2002), cited by Defendant does not suggest otherwise. That case involved a consent to search given immediately after an illegal stop. In such cases, the government must show that the consent to search was "sufficiently an act of free will to purge the primary taint of the illegal seizure." <u>Id.</u> at 830. This determination requires the court to examine "(1) the temporal proximity between the illegal search or seizure and the consent, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct." <u>Id.</u> That case has no application here, as both the detention and the arrest of Defendant were lawful. <u>See</u> <u>United States v. Martinez</u>, 358 F.3d 1005, 1009 (8th Cir. 2004) (distinguishing <u>Yousif</u> on this basis).

Nor did the officers exceed the scope of the consent by moving the car to another location. The scope of consent is determined by how a reasonable person would have understood the conversation between Defendant and the officer. <u>Florida v. Jimeno</u>, 500 U.S. 248, 250-51 (1991). Here, Defendant gave the officers consent to search the car, and shortly thereafter Det. Hollocher advised him that he needed to move the car to safer location to conduct the search. Where, as here, Defendant voiced no objection to

17

conducting the search at a safer location, it was reasonable for the officers to understand they had consent to do so. See United States v. Saenz, 474 F.3d 1132, 1137 (8th Cir. 2007) (finding consent to search voluntary, though no Miranda warnings given, where officers' request to move truck to safer area with less traffic was not coercive, officers did not make threats or promises or suggest defendant could not refuse consent, detention was for brief period of time, and defendant was silent during search); United States v. Jackson, 381 F.3d 984, 988-89 (10th Cir. 2004) (objectively reasonable for officer to believe consent to search included closed container of powder in carry-on baggage, where defendant was told officer suspected narcotics and did not object to search of container), cert. denied, 544 U.S. 963 (2005). Based on the totality of the circumstances, the Court concludes that Defendant voluntarily consented to a search of the vehicle.

Even if there were some question as to the validity or scope of Defendant's consent, the officers were entitled to search the Oldsmobile under the "automobile exception" to the warrant requirement, as they had probable cause to believe that it contained contraband or evidence of criminal activity. United States v. Ross, 456 U.S. 798, 804-09 (1982). As the government correctly notes, the justification to conduct a warrantless search of a vehicle does not vanish once the car is immobilized. Michigan v. Thomas, 458 U.S. 259, 261 (1983); accord United States v. Casares-Cardenas, 14 F.3d 1283, 1286-87 (8th Cir. 1994) (upholding warrantless search of automobile although vehicle had been in police custody for two months prior to search). To the contrary, the courts have upheld the validity of a delayed search of a vehicle at the police station

where, as here, there was probable cause at the time of the stop to justify an immediate search. Chambers v. Maroney, 399 U.S. 42, 52 & n.10 (1970) (search of car after removal to police station reasonable where probable cause existed immediately after defendant's arrest, but darkness in parking lot prevented search); Capraro v. Bunt, 44 F.3d 690, 691 (8th Cir. 1995) (approving search of truck at police station several hours after seizure where officer had probable cause to search at time of seizure).

### D. Items Seized From Defendant

After placing Defendant under arrest, the officers were entitled to search Defendant incident to his arrest. See New York v. Belton, 453 U.S. 454, 458-59 (1981); United States v. Robinson, 414 U.S. 218, 224 (1973); United States v. Pratt, 355 F.3d 1119, 1121, 1124 (8th Cir. 2004). Although it is unclear what the officers seized from Defendant's person following his arrest, any such items would not be subject to suppression.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence [Doc. No. 67] be **Denied**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Suppress Statements [Doc. No. 68] be **Denied**.

The parties are advised that they have eleven (11) days, to and including **May 25, 2007**, in which to file written objections to this report and recommendation pursuant to

28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir.1990).

_____
AUDREY G. FLEISSIG
United States Magistrate Judge

Dated this 14th day of May, 2007.