UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:07-CR-166 CEJ |
| ) | |
| HUGO BARRY THOMPSON, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Pursuant to 28 U.S.C. § 636(b), the Court referred all pretrial matters in this case to United States Magistrate Judge Audrey G. Fleissig for determination and recommended disposition, where appropriate. On May 14, 2007, Judge Fleissig issued a Report and Recommendation with respect to the motions filed by defendant Hugo Barry Thompson to suppress evidence and to suppress statements. The defendant filed timely objections to the magistrate judge's recommendations that his suppression motions be denied.

Pursuant to 28 U.S.C. § 636(b)(1), the Court has reviewed *de novo* the findings and conclusions of the magistrate judge to which objections are made. In conducting its review, the Court has listened to the recording of the evidentiary hearing before the magistrate judge and read the transcript of the hearing. Having done so, the Court concludes that the factual findings made by Judge Fleissig are supported by the evidence and her legal conclusions are correct.

**I. Discussion**

The testimony establishes that on February 19, 2007, Thompson and his passenger, Jacqueline Johnson, were being surveilled by law enforcement officers as Thompson was driving on Interstate 44. One of the surveillance officers saw Thompson commit the traffic violation of failure to maintain a single lane, and directed Thompson to stop on the side of the highway. This traffic violation established probable cause for the stop of Thompson's vehicle. See Whren v. United States, 517 U.S. 806, 818 (1996); United States v. Martin, 411 F.3d 716, 719 (8th Cir. 2002).

After the defendant's Oldsmobile was stopped, Detective Joe Hollocher approached Thompson, who was standing on the roadside with Johnson. Det. Hollocher asked Thompson where he was coming from. Thompson responded that he was in St. Louis to attend a family reunion, and that he and Johnson, whom he referred to as his cousin, had gone out to eat and had gotten turned around. Thompson was not then restrained in his movements and no force was used against him. In the course of a traffic stop, a police officer may properly question a driver and passenger about their destination and purpose, and may ask them to step out of the car. United States v. Pulliam, 265 F.3d. 736, 740 (8th Cir. 2001); United States v. Winters, 221, F.3d 1039, 1041 (8th Cir. 2000); United States v. Barahona, 990 F.2d 412, 416-417 (8th Cir. 1993). The question Det. Hollocher asked Thompson was reasonably related in scope to the investigation of the traffic violation. See United States v. Johnson, 58 F.3d 356, 357-

58 (8th Cir. 1995); United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994). Additionally, because Thompson was not in custody when he was questioned by Det. Hollocher, there was no requirement that he be given the Miranda warnings.[1] See Berkemer v. McCarty, 468 U.S. 420, 439 (1984).

After marijuana was discovered in the Uplander vehicle, probable cause arose for Thompson's arrest. Before the arrest, the law enforcement officers knew that the Uplander had been rented by a man who had also rented a vehicle that was involved in a marijuana seizure in January 2007. The officers also noted other similarities: Inside the Uplander were bulky items covered by a sheet, which was the same way that the marijuana was concealed in the January incident. Also both incidents involved a group of individuals and the rental of multiple hotel rooms by one member of the group. According to the testimony, surveillance officers saw Thompson and two men looking into the Uplander. Later, Thompson was seen leaving the hotel, conversing with a woman who got into the Uplander that was parked next to his Oldsmobile. Both vehicles left the hotel parking lot at the same time, with the Uplander trailing Thompson's Oldsmobile. The facts and circumstances known to the officers at the time were sufficient to warrant a prudent officer to believe that Thompson was connected with the Uplander and the marijuana found in it. See Illinois v. Gates, 462 U.S. 213 (1985); United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001).

---

[1] Miranda v. Arizona, 384 U.S. 436, 478-79 (1966).

The Court further finds that the evidence supports the conclusion that Thompson voluntarily consented to the search of his car. At the time of the consent, Thompson was thirty-nine years old; he was not under the influence of drugs or alcohol; no coercive methods were employed by the police; no promises or other inducements were made to him; his consent was requested in an open, public area; and the entire encounter lasted only a few minutes. See United States v. Alcantar, 271 F.3d 731, 737 (8th Cir. 2001) and United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001) (both describing factors to be considered in determining voluntariness of consent). There is no evidence that Thompson's will was overborne. Instead, the totality of the circumstances establish that Thompson's consent was the product of his own free will. Moreover, the fact that Thompson was under arrest and handcuffed when he consented to the search did not vitiate the voluntariness of his consent. See United States v. Perry, 437 F.3d 782, 785 (8th Cir. 2006); United States v. Montano-Gudino, 309 F.3d 501, 504 (8th Cir. 2002).

The search of the Oldsmobile after it was transported to the offices of the Drug Enforcement Administration did not exceed the scope of Thompson's consent. After obtaining Thompson's consent, Det. Hollocher opened the trunk of the vehicle and began searching it. However, he quickly determined that it was too dangerous to continue because the car was on the side of a busy interstate highway. Det. Hollocher told Thompson that the car would be taken to the DEA offices where the search would be completed. Thompson

did not object.  Given the totality of the circumstances, a reasonable person would have understood that Thompson's consent was not limited to searching the car on the side of the highway, but that it extended to searching the car in a safer location.  See United States. V. Saenz, 474 F.3d 1132, 1137 (8th Cir. 2007).

Finally, the search of Thompson's car was authorized by the "automobile exception" to the requirement that the police obtain a search warrant.  As discussed above, the facts and circumstances known to the police officers reasonably led them to conclude that there was a connection between the Oldsmobile and the Uplander in which marijuana was found.  Because there was probable cause to believe that contraband or evidence of a crime would be found in Thompson's vehicle, neither a warrant nor Thompson's consent was required for the search.  See United States v. Ross, 465 U.S. 798, 804-09 (1982); Chambers v. Maroney, 399 U.S. 42, 46-47 (1970).

**II. Conclusion**

For the foregoing reasons, the Court overrules the defendant's objections to the magistrate judge's findings of fact and conclusions of law.  Further, the Court concludes that there is no factual or legal basis for suppressing the evidence or statements obtained from the defendant.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge Audrey G. Fleissig is sustained, adopted, and incorporated herein.

**IT IS FURTHER ORDERED** that the motions of defendant Hugo Barry Thompson to suppress evidence [Doc. #67] and to suppress statements [Doc. #68] are **denied**.

---
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 24th day of July, 2007.